In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 17-1522

LEONCIO ELIZARRI, RONALD RICHARDSON, and GRZEGORZ
ZAWADOWICZ, individually and on behalf of a class,

*Plaintiffs-Appellants,*

*v.*

SHERIFF OF COOK COUNTY, ILLINOIS, and COOK COUNTY,
ILLINOIS,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 07 C 2427 — **Joan B. Gottschall**, *Judge.*

---

ARGUED APRIL 6, 2018 — DECIDED AUGUST 24, 2018

---

Before EASTERBROOK, RIPPLE, and HAMILTON, *Circuit
Judges.*

EASTERBROOK, *Circuit Judge.* The theme of this constitutional suit under 42 U.S.C. §1983 is that the Sheriff of Cook County, Illinois, did not do enough to prevent guards and other public employees from stealing or losing the belongings of inmates at the Cook County Jail. New arrivals must

surrender their possessions. There is no doubt that theft of these belongings is a crime and a tort (conversion) under state law, and a violation of the Due Process Clause (depriving prisoners of property with no process at all), but plaintiffs (a certified class) do not contend that the Sheriff personally stole anything or even tolerated a known thief—and none of the guards is a defendant.

Failure to prosecute thieves does not violate the Constitution. See *Castle Rock v. Gonzales*, 545 U.S. 748 (2005). Likewise a guard's negligent loss of belongings, while potentially tortious under state law, does not violate the Constitution. See *Daniels v. Williams*, 474 U.S. 327 (1986) (negligent loss of prisoners' property is not a constitutional wrong).

Still, plaintiffs insist, the Constitution imposes on the Sheriff a duty to do something about excessive rates of loss. The theory must be that keeping careless (or worse) employees on the staff, without implementing an adequate system of quality control, violates the Constitution whether or not any of those employees has violated the Constitution. We need not decide whether this is a viable theory of liability.

A jury returned a verdict for the Sheriff. Evidence showed that the loss-or-theft rate, while substantial, had been falling as the Sheriff implemented additional controls. The jury evidently concluded that the Sheriff had done enough—had taken "reasonable measures," in the language of a jury instruction that we quote below. The district judge denied the class's post-trial motions. Plaintiffs do not contend in this court that the evidence is inadequate to support the verdict, and the litigants have not asked us to resolve the underlying legal question—when, if at all, an organization is liable under the Constitution for poor control of the employ-

ees' conduct. Instead the parties debate the accuracy of one jury instruction and two evidentiary rulings.

The judge told the jury that the Sheriff could be found liable for violating the Fourteenth Amendment if:

> 1. There was a widespread custom or practice which allowed plaintiffs' property to be lost or stolen before it could be returned to plaintiffs when they left the Jail.
>
> 2. The custom or practice was the moving force behind plaintiffs' losses. A custom or practice is a moving force behind a constitutional violation if the custom or practice was the direct cause of the loss.
>
> 3. The Defendant [sic: the suit has two defendants, the Sheriff and the County, but the instructions always use the singular] was deliberately indifferent to Plaintiffs' losses. To show "deliberate indifference," the Plaintiffs must prove by a preponderance of the evidence these two things:
>
> > (a) That the Defendant actually knew of the substantial risk that the property storage practices in effect would cause a loss of a Plaintiffs' [sic] property; and
> >
> > (b) The Defendant consciously disregarded this risk by failing to take reasonable measures to prevent such losses.

Plaintiffs now contend that part 3(b) was incorrect because it set up an argument by counsel for the Sheriff that liability was appropriate only if the Sheriff "purposely took no action" in response to a known risk. Plaintiffs say that this argument misstated the law, because "unreasonable" action is culpable along with "no" action and because conscious disregard is not quite the same thing as purpose. See *Farmer v. Brennan*, 511 U.S. 825 (1994).

Because counsel's argument was wrong, plaintiffs insist, the instruction must be wrong too. That's a curious inference. The instructions themselves tell the jury what's what. If

a lawyer misstates an instruction—as plaintiffs say the defense lawyer did—then opposing counsel can correct the error by pointing to the instruction. Judges routinely tell jurors that the arguments of counsel cannot contravene the instructions or supplement the evidence. This is why plaintiffs need to (and do) attack the instructions themselves, not just what opposing counsel made of those instructions. Plaintiffs add that because the Fourth Amendment (applied to the states by the Fourteenth) can continue to apply during pretrial custody, see *Manuel v. Joliet*, 137 S. Ct. 911 (2017), the instruction should have told the jury to use an objective standard rather than any species of disregard or indifference.

But plaintiffs can't get anywhere challenging the instructions, because plaintiffs' counsel did not object or ask for any different language about the required mental state. They conceded that a jail is entitled to take custody of a prisoner's possessions. See *Illinois v. Lafayette*, 462 U.S. 640, 646 (1983). They did not identify a Fourth Amendment claim in the pretrial order, which meant that it is not part of the case. If the property disappeared, that was a problem under the Due Process Clause, if it was a problem at all—and plaintiffs litigated this as a due process case. They cannot change grounds on appeal. Any claim under the Fourth Amendment has been waived, not just forfeited.

Plaintiffs did ask the judge to give an additional instruction modeled on *Pembaur v. Cincinnati*, 475 U.S. 469 (1986), which concerns how to identify an official policy that could support municipal liability under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). (The Sheriff has been sued in his official capacity and is treated as a municipality under Illinois law when running the Jail.) The

judge denied this request, stating that the other instructions (including the one we have quoted) adequately covered this topic. Another instruction said: "The Office of the Sheriff of Cook County need not have formally approved the conduct so long as Plaintiffs prove that a policy-making official knew of the pattern and allowed it to continue." The district judge's approach is a reasonable one.

Indeed, the *Pembaur* argument is a diversion, because that case, like *St. Louis v. Praprotnik*, 485 U.S. 112 (1988), and *Monell* itself, concerns the circumstances under which an organization can be liable for its employees' violation of the Constitution. *Pembaur* does not create the possibility of organizational liability in the absence of individual violations. To the contrary, it is established that a municipality cannot be held liable without an underlying violation of the Constitution by a municipal employee. See, e.g., *Los Angeles v. Heller*, 475 U.S. 796 (1986); *Swanigan v. Chicago*, 881 F.3d 577, 582 (7th Cir. 2018). A distinctive feature of this case—and the reason why we said earlier that we are not deciding whether liability is possible even in theory—is that plaintiffs wanted the jury to find the Sheriff liable without showing that *any* of the Sheriff's subordinates violated the Constitution.

Plaintiffs' first argument about the evidence is that the district court should have told the jury about *Black v. Dart*, 2015 IL App (1st) 140402 (2015). This decision holds (according to plaintiffs) that Illinois law never provides inmates of the Jail with financial remedies for lost or stolen goods, but according to defendants it holds only that one plaintiff failed to present his claim for compensation properly.

The dispute about the scope of *Black* highlights a contradiction in the Sheriff's legal position. The Sheriff's staff tells

inmates that the state courts provide remedies for lost or sto-len property, but, when ex-inmates sue, the Sheriff's lawyers tell the state judiciary that no remedy is available. That two-faced approach is hard to justify, but state remedies are a matter of state law rather than constitutional entitlement. The Sheriff's lawyers did not argue to the jury in this suit that Illinois supplies a remedy for lost or stolen property, cf. *Parratt v. Taylor*, 451 U.S. 527 (1981), and it was therefore un-necessary for the judge to tell the jury that state law does not provide a remedy (if that is indeed the right understanding of *Black*).

The second argument about evidence concerns a pro-posed spoliation instruction. Plaintiffs say that the Sheriff created an electronic database holding information about de-tainees' property. The Sheriff introduced a database into ev-idence, but plaintiffs insist that it is not the real one, or alter-natively that there were two databases and that the Sheriff produced only one. Plaintiffs asked the district court to tell the jury that the Sheriff's concealment of this second data-base supports an inference that its contents would have been adverse to the Sheriff's position, for according to plaintiffs this database would have shown the disappearance of 23,000 property bags that the Sheriff does not concede losing.

The district judge found the evidence insufficient to show that any other database had existed and been destroyed, let alone that it had been destroyed in bad faith for the purpose of concealing evidence, a finding essential to a spoliation in-struction. See, e.g., *Rummery v. Illinois Bell Telephone Co.*, 250 F.3d 553, 558 (7th Cir. 2001). But the judge allowed plaintiffs' lawyer to argue to the jury—despite the paucity of evi-dence—that the Sheriff had concealed or destroyed inculpa-

tory records. If there was an error, it favored plaintiffs. The district judge did not abuse her discretion by declining to put the court's thumb on the scale in plaintiffs' favor.

AFFIRMED