Sykes, Circuit Judge. While on the lookout for a serial bank robber, Chicago police officers misidentified Rashad Swanigan as the perpetrator, arrested him, and detained him for approximately 51 hours without a probable-cause hearing. He was released when the state prosecutor decided not to press charges, and police later found the true culprit. Swanigan sued the officers involved in his arrest and detention under 42 U.S.C. § 1983 alleging various constitutional violations. He later filed a related suit against the City raising Monell claims. The suits were consolidated but maintained separate case numbers and dockets, and the district judge stayed the Monell suit to allow the suit against the officers to proceed on its own. A jury found for Swanigan on a single claim—for unconstitutionally prolonging his detention—and awarded $60,000 in damages. Swanigan then moved to lift the stay on his suit against the City. The judge denied the motion and dismissed the suit entirely, ruling that Swanigan waived most of his claims and that the others were not justiciable. We vacated the dismissal order as premature and remanded with instructions to allow Swanigan to amend his complaint. Swanigan v. City of Chicago, 775 F.3d 953 (7th Cir. 2015). With the stay lifted, Swanigan filed an amended complaint alleging constitutional injuries stemming from three police-department policies: (1) a “hold” policy by which the officers kept him in custody; (2) a policy of requiring detainees to participate in police lineups; and (3) a policy regarding the contents of the closed case file that continued to label him as the bank robber. The judge dismissed the Monell suit in its entirety. We affirm. Swanigan cannot recover twice for the prolonged detention, and his other claims have no basis in federal law. The Constitution has nothing to say about unreliable police lineups that don’t taint a trial. Neither does the Constitution address reputational harm from false or misleading police reports. And Swanigan lacks standing to pursue injunctive or declaratory relief because the challenged policies are unlikely to harm him in the future. I. Background Our earlier opinion contains a more complete description of the facts and procedural history of the case; the following is a condensed version. After cashing checks at a Chicago bank in August 2006, Swanigan was stopped by two Chicago police officers looking for the “Hard Hat Bandit,” who was known to rob banks while wearing a yellow hard hat. After learning that Swani-gan’s automobile registration was suspended, the officers searched the car and found a knife—and a yellow hard hat. (Swanigan kept the knife in his car to peel produce, and the hard hat was required for his job as a construction worker.) Thinking Swani-gan was the Hard Hat Bandit, the officers arrested him for traffic violations and unlawful use of a weapon and took him to the police station. Three hours into the detention, officers placed a “hold” on Swanigan in order to keep him at the station while detectives investigated him for a robbery linked to the Hard Hat Bandit. While in custody the police used Swanigan as a filler in lineups for other investigations and as the target in lineups investigating the Hard Hat Bandit robbery. Several witnesses identified Swanigan as the robber. On the second full day after Swanigan’s arrest, a state prosecutor assessed the case. She decided not to charge Swanigan for the robbery after concluding that the identifications were suspect. After 51 hours of detention without a probable-cause hearing, Swanigan was released. A month later police entered a final notation into Swanigan’s case file: “Cleared—closed other exceptional.” Swanigan contends that because the police department assigns the cleared-closed notation to the offender’s file after solving a crime, the designation labels him as the Hard Hat Bandit. Although “other exceptional” conveys that he wasn’t prosecuted, the file’s narrative account lists the reasons that the police initially thought he was the perpetrator. And no change was made to Swanigan’s file after the police arrested the real Hard Hat Bandit. Swani-gan contends that the case file continues to cast suspicion on him as the Hard Hat Bandit, giving rise to possible reputational harm and police bias against him. Swanigan’s first lawsuit named 20 officers and the City as defendants and alleged nine separate constitutional and state-law claims. Late in the litigation Swanigan tried to add a Monell claim against the City, but the judge wouldn’t allow the amendment. So he filed a new freestanding Monell action against the City, which was promptly consolidated with the first suit and stayed pending the disposition of the claims against the officers. Partial summary judgment narrowed the scope of the litigation, and a jury eventually found that the officers had probable cause to arrest Swanigan at the bank but that they unconstitutionally prolonged his detention. See County of Riverside v. McLaughlin, 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991) (holding that a detention lasting longer than 48 hours without a judicial determination of probable cause is presumptively unreasonable under the Fourth Amendment). In the end, seven officers were held liable for the unduly long detention. The jury awarded $60,000 in compensatory damages. In the related Monell suit against the City, Swanigan alleged constitutional injuries arising from nine separate policies. After our remand, Swanigan trimmed his complaint in light of the jury’s verdict. The amended version centered on the police department’s hold policy, its lineup policy, and its policy regarding cleared-closed case reports. The City moved to dismiss under Rules 12(b)(1) and 12(b)(6), of the Federal Rules of Civil Procedure. The judge granted the motion, and the case now returns to us for further review. . II. Discussion We review the judge’s dismissal order de novo.[1] Roake v. Forest Pres. Dist. of Cook Cty., 849 F.3d 342, 345 (7th Cir. 2017). Questions of standing are appropriately addressed via a motion, to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction. Berger v. NCAA, 843 F.3d 285, 289 (7th Cir. 2016). A case is properly dismissed under Rule 12(b)(6) if the complaint does not “state' a claim to relief that is plausible on its face.” Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Section 1983 provides a claim against a person acting under color of law who deprives another of a federal right. 42 U.S.C. § 1983. A municipality is subject to § 1983 liability if one of its policies caused the plaintiffs harm. Monell v. Dep’t of Soc. Servs. of New York, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A. Hold Policy Federal common law prevents § 1983 plaintiffs from recovering twice for the same injury. Janusz v. City of Chicago, 832 F.3d 770, 774 & n.1 (7th Cir. 2016). That means Swanigan cannot recover from the City for the prolonged detention because he was compensated for that constitutional violation in his suit against the officers. ■ Attempting to evade the double-recovery rule, Swanigan contends that his detention occurred in three distinct stages: (1) the arrest; (2) the three hours at the police- station before the hold was issued; and (3) the two'days at the station after the hold was-placed. Because the seven officers found liable for the detention each arrived during the third stage, Swanigan argues that he hasn’t been compensated for the arrest and first three hours. That argument falls flat. First, a jury found that the officers lawfully arrested Swanigan, and the City can’t be liable “based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.” City of Los Angeles v. Heller, 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986); see also Thomas v. Cook Cty. Sheriff’s Dep’t, 604 F.3d 293, 305 (7th Cir. 2010) (observing that a municipality cannot be found liable under Monell when “such a finding would create an inconsistent verdict”) (emphasis omitted). The City isn’t liable for the first three hours at the station either. Swanigan cannot carve out particular hours from his detention as separately compensable. He faced a single detention, not multiple detentions, and he’s entitled to only one recovery though different constitutional theories support liability and different officers were involved. See Bosco v. Serhant, 836 F.2d 271, 281 (7th Cir. 1987) (“[Ojnce the plaintiff has been fully compensated for his injuries by one or more of the tortfeasors, he may not thereafter recover any additional compensation from any of the remaining .tortfeasors.”) (quotation marks omitted). Moreover, even if Swanigan could split the detention into separate segments, he’d still encounter two problems. First, nothing suggests that the City’s hold policy caused the prehold detention. That’s fatal: In a Monell case, “[t]he central question is always whether an official policy ... caused the constitutional deprivation.” Glisson v. Ind. Dep’t of Corr., 849 F.3d 372, 379 (7th Cir. 2017). Second, McLaughlin establishes that detentions lasting less than 48 hours are presumptively lawful and cannot be challenged on the basis of the timespan alone. 500 U.S. at 56, 111 S.Ct. 1661. Some additional factor, like animus toward the detainee, must be present to rebut the presumption. Id. No additional factor is present here, so even if we considered the first three hours in isolation, the claim is doomed. That rules out monetary relief, but Swanigan also seeks an injunction against the hold policy. That request additionally fails for lack of standing, which is “an essential and unchanging' part of the case-or-controversy requirement of Article III.” Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); see U.S. CONST, art. III, § 2, cl. 1. Because an injunction is a forward-looking remedy, a plaintiff seeking this form of relief has standing to sue for an alleged future injury only if “the threatened injury is ‘certainly impending,’ or there is a ‘substantial risk’ that the harm will occur.” Susan B. Anthony List v. Driehaus, — U.S. —, 134 S.Ct. 2334, 2341, 189 L.Ed.2d 246 (2014) (quoting Clapper v. Amnesty Int’l USA, 568 U.S. 398, 414 n.5, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013)) (internal quotation marks omitted). “[P]ast injury alone is insufficient,” as is a threat of injury that is “merely conjectural or hypothetical.” Simic v. City of Chicago, 851 F.3d 734, 738 (7th Cir. 2017) (quotation marks omitted). The injury Swanigan forecasts— he says he might be pulled over, arrested, and again subjected to an unconstitutionally long detention—is layered with hypothetical and nowhere near certain. That’s particularly true because we assume that Swanigan will conform his conduct to the requirements of the law and avoid arrest altogether. See O’Shea v. Littleton, 414 U.S, 488, 497, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Without a showing of “a sufficient likelihood that he will again be, wronged in a similar way, [Swanigan] is no more entitled to an injunction than any other citizen.” City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).[2] B. Lineup Policy During ’ his detention, Swanigan was placed in several lineups, and four eyewitnesses misidentified him as the' Hard Hat Bandit. His claim for damages against the City rests on the Due Process Clause of the Fourteenth Amendment. He alleges that the lineups were conducted improperly and led to unreliable identifications. This argument goes nowhere because the mistaken identifications were never admitted in a trial. “[T]he constitutional interest implicated in challenges to police identification procedures is eviden-tiary in nature.” Alexander v. City of South Bend, 433 F.3d 550, 555 (7th Cir. 2006). Specifically, .the due-process right to a fair trial requires exclusion of unreliable eyewitness identifications procured through police misconduct. Perry v. New Hampshire, 565 U.S, 228, 238-40, 132 S.Ct. 716, 181 L.Ed.2d 694 (2012) (synthesizing cases). But a misidentification “does not in itself intrude upon a constitutionally protected interest.” Manson v. Brathwaite, 432 U.S. 98, 113 n.13, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). In this case Swani-gan “could not possibly have been deprived of his right to a fair trial since he was never tried.” Hensley v. Carey, 818 F.2d 646, 649 (7th Cir. 1987). Trying a different route, Swan-igan inventively describes his coerced participation in lineups as an unconstitutional “seizure within a seizure.” There’s no such thing. A Fourth Amendment seizure occurs “when there is a governmental termination of freedom of movement through means intentionally applied.” Scott v. Harris, 550 U.S. 372, 381, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quotation marks omitted). Being placed in a lineup while in custody “does not curtail a person’s freedom of action” because he has “already lost that freedom.” Wilkins v. May, 872 F.2d 190, 194 (7th Cir. 1989). Suspects are given any number of compulsory instructions while seized, and Swanigan’s logic would turn each command into a new seizure. That’s plainly wrong. A person can’t be seized while seized any more than he can jump while jumping. He’s either seized or not; he isn’t extra seized when forced to sit in a police car or stand in a lineup. C. Cleared-Closed Case Policy Finally, Swanigan claims that the police department’s policy regarding cleared-closed case files violates his constitutional rights by continuing to label him as the Hard Hat Bandit. He alleges that the policy harms him in two ways. First, because the public can access the record with a Freedom of Information Act request, he might suffer reputational harm. Second, if he is stopped by police, even for a routine traffic matter, the officer might use the misleading case report against him. Swanigan grounds this claim in the Due Process Clause and seeks damages and an injunction expunging the record. The City responds that the case file doesn’t actually label Swanigan as the Hard Hat Bandit because it accurately reports that the prosecutor declined to pursue charges based on the unreliable identifications. This argument overlooks the difference between “not guilty” and “innocent.” If Swanigan is correct that the record could be read as continuing to link him to the Hard Hat Bandit robbery, a reader could reasonably surmise that he committed the crime but the prosecutor simply couldn’t prove it beyond a reasonable doubt. That, of course, isn’t the truth. Swanigan’s real problem is that the claim has no legal anchor. The potential for public stigma isn’t cognizable as a due-process violation because reputa-tional harm doesn’t deprive a person of life, liberty, or property. See Paul v. Davis, 424 U.S. 693, 712, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). And it’s entirely speculative to suggest that a police officer might use the cleared-closed file to violate Swanigan’s rights in some unknown way in some hypothetical future traffic stop. For these reasons, Swanigan has neither a legal hook for this claim nor standing to seek an injunction. Affirmed. . We reject Swanigan’s contention that the judge abused her discretion by taking judicial notice of the facts recited in our first Swani-gan opinion. Our factual narrative rested on the trial record, and Swanigan doesn't dispute any part of it. If "the finding taken from the prior proceeding is not subject to reasonable dispute, then the court has satisfied the evidentiary criteri[on] for judicial notice.” Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1082 (7th Cir. 1997) (quotation marks omitted). . Swanigan’s claim for declaratory relief fails for the same reason. See Feit v. Ward, 886 F.2d 848, 857 & n.11 (7th Cir. 1989) (holding that claims for declaratory relief, like claims for injunctive relief, require ongoing or impending harm).