In the

# United States Court of Appeals
### For the Seventh Circuit

No. 22-2731

JACK WILLIAM MORGAN,

*Plaintiff-Appellant,*

*v.*

FEDERAL BUREAU OF PRISONS and ANDREW CIOLLI,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 22 C 50080 — **Iain D. Johnston**, *Judge.*

ARGUED OCTOBER 30, 2024 — DECIDED FEBRUARY 28, 2025

Before SCUDDER, ST. EVE, and KIRSCH, *Circuit Judges.*

ST. EVE, *Circuit Judge*. Jack William Morgan purchased a turkey log from the commissary at Federal Correctional Institution (FCI) Thomson in May 2021, in an apparent violation of the prison's kosher diet program. As a result of his purchase, the institutional chaplain suspended Morgan's approval for a kosher diet for thirty days. Morgan says that the suspension forced him to choose between starving and violating his religious beliefs as a Messianic Jew—and he chose

starvation for thirty days. After exhausting his administrative remedies, he sued the Federal Bureau of Prisons ("BOP") and the prison warden, Andrew Ciolli, in federal court, seeking an order requiring the BOP to change its dietary policies and monetary damages under the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb ("RFRA"). The BOP has since transferred Morgan to a new BOP facility.

On preliminary review pursuant to 28 U.S.C. § 1915A, the district court dismissed Morgan's complaint with prejudice for failure to state a claim upon which relief can be granted. We start and end our analysis with two threshold issues: subject-matter jurisdiction and sovereign immunity. Morgan has not adequately alleged standing to pursue his claim for injunctive relief. And federal sovereign immunity bars his claim for monetary damages. We thus affirm but modify the judgment to reflect a jurisdictional dismissal.

## I. Background

Morgan identifies as a Messianic Jew. While incarcerated at FCI Thomson, he applied for a kosher diet, citing his religion, and the chaplain approved his application.

After Morgan purchased a turkey log from the commissary in May 2021, however, the chaplain suspended Morgan's approval for the prison's kosher diet program for thirty days. In a BOP form titled, "Notification of Inmate Religious Diet Violation," signed by the chaplain on June 1, 2021, the chaplain informed Morgan that because of "Unauthorized Commissary - Turkey Log," the chaplain had recommended a suspension starting June 3, 2021. The form further provided that if Morgan believed "this report is in error, [he] must submit a written request to the Chaplain for an interview within 2

working days of receipt of this notice." The form also contained a standard instruction that if Morgan was unsatisfied with the decision, he could appeal through the administrative remedy process.

Morgan appealed his suspension through the administrative remedy process, faced rejection at each level of review, then filed a complaint in federal court against the BOP and Warden Ciolli. In his initial complaint, Morgan alleged that he had fasted for the entire thirty days of his suspension, theorized that national and institutional BOP policies "that govern the removal of inmates from religious diets" substantially burden inmates' religious exercise in violation of RFRA, and asked the district court to "[r]escind all BOP policies that allow them to remove me from the kosher diet." Pursuant to 28 U.S.C. § 1915A, the court *sua sponte* dismissed Morgan's complaint for failure to state a claim, finding insufficient factual allegations to plausibly show that the BOP's dietary policies substantially burdened Morgan's religious exercise.

In an amended complaint, Morgan clarified that his suspension was involuntary, and he attached the religious-diet-violation notification form and his administrative grievances as supporting documentation. He also added a request for monetary relief, as an alternative to injunctive relief.

The district court again dismissed Morgan's complaint for failure to state a claim. The court reasoned that Morgan had failed to state a claim under RFRA because he chose to purchase the turkey log and fast for the length of his resulting suspension from the kosher diet program. According to the court, Morgan caused his own suffering. The court noted two additional problems: the complaint included no allegations about Ciolli's conduct, and the BOP is immune from suits for

damages under RFRA. The court deemed any further amendment futile, so it dismissed the amended complaint with prejudice and entered final judgment for the defendants.

As of this appeal, Morgan remains in custody, but the BOP has transferred him to another facility.

## II. Discussion

We must satisfy ourselves that subject-matter jurisdiction exists before we address the merits of a case. *See Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017). We therefore start by asking whether Morgan has established Article III standing to sue for past or future injuries. If so, we address another threshold issue: whether federal sovereign immunity protects the defendants from Morgan's claim for monetary damages. We then address the district court's rationale for dismissal: the court's conclusion that Morgan's amended complaint failed to state a claim upon which relief can be granted. We review this conclusion de novo. *See Dinerstein v. Google, LLC*, 73 F.4th 502, 511 (7th Cir. 2023).

### A.

"Standing doctrine traces its origins to Article III of the Constitution, which grants federal courts the power to resolve 'Cases' and 'Controversies.'" *Id*. (quoting U.S. Const. art. III, § 2). A case or controversy requires a plaintiff to have standing, meaning the plaintiff (1) suffered a concrete, particularized, and actual or imminent injury (an "injury in fact"), (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

As the party invoking federal jurisdiction, the plaintiff bears the burden of establishing these elements "in the same way as any other matter on which the plaintiff bears the burden of proof…." *Lujan*, 504 U.S. at 561. At the pleading stage, "the plaintiff must 'clearly … allege facts demonstrating' each element" of standing for each form of relief he seeks. *Spokeo*, 578 U.S. at 338 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)); *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021). In deciding whether he has met this burden, we "apply the same analysis used to review whether a complaint adequately states a claim." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). That is, we accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Id*. (citing *Warth*, 422 U.S. at 501).

The standing issue in this case concerns Morgan's request for broad prospective injunctive relief: a court-ordered change in the BOP's dietary policies. Morgan's June 2021 suspension from the kosher diet program supports his standing to sue for damages, but "a past injury alone is insufficient to establish standing for purposes of prospective injunctive relief." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 111 (1983); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). A plaintiff must adduce some other evidence that he faces a "real and immediate" threat of future injury from the challenged conduct as opposed to a merely "conjectural or hypothetical" threat. *Lyons*, 461 U.S. at 102 (internal quotation marks omitted).

Morgan's threat of future injury from the BOP's dietary policies depends upon him once again purchasing a turkey log or other "unauthorized commissary" and the chaplain at the prison where he is now incarcerated once again removing

him from the kosher diet list because of this purchase. In his amended complaint, Morgan says nothing about whether he has or intends to purchase another turkey log. In his brief on appeal, however, Morgan adds that he considers turkey kosher and intends to continue purchasing items from the commissary that are consistent with his religious diet.

The liberal amendment rule of 28 U.S.C. § 1653 permits litigants to amend "[d]efective allegations of jurisdiction … in the trial or appellate courts." Cases in which this rule avails litigants on appeal usually involve defective allegations of diversity or jurisdictional amount. *See*, *e.g.*, *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 670 (7th Cir. 2012) (adding allegations of domicile); *Smoot v. Mazda Motors of Am., Inc.*, 469 F.3d 675, 677 (7th Cir. 2006) (correcting allegations of the amount in controversy). Standing is jurisdictional, so this rule also covers defective allegations of standing. *See Yan v. ReWalk Robotics Ltd.*, 973 F.3d 22, 36 (1st Cir. 2020); *Williams v. Lew*, 819 F.3d 466, 471 (D.C. Cir. 2016).

Morgan has not moved under § 1653 to amend his complaint to add the allegations about his intended commissary purchases. But even if he had, we would deny the motion as futile. Taking Morgan's allegations as true and drawing all reasonable inferences in his favor, his prospects of future injury are too speculative to support standing. First, one past turkey-log purchase does not establish that Morgan will likely purchase "unauthorized commissary" in the future. And while Morgan has alleged (in his brief on appeal) that he intends to continue purchasing items from the commissary that are consistent with his definition of kosher, he has not alleged that the commissary at his new facility sells turkey logs or that he intends to purchase more turkey logs.

Second, applicable regulations authorize but do not require an institutional chaplain to withdraw an inmate's approval for a religious diet "if the inmate is documented as being in violation of the terms of the religious diet program to which the inmate has agreed in writing." 28 C.F.R. § 548.20(b). FCI Thomson's chaplain suspended Morgan's approval for a kosher diet after receiving notice that Morgan committed one religious-diet-program violation in the form of a turkey-log purchase, but the BOP has since transferred Morgan to a new BOP facility. The record provides no reason to believe that the chaplain at his new facility would be so quick to issue a suspension, especially if Morgan explained his definition of kosher to the chaplain.

These circumstances put Morgan in the same position as other plaintiffs whose allegations have failed to establish an injury in fact. *See Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018) (plaintiff's likelihood of being pulled over, arrested, and again subjected to a long detention was "layered with hypothetical and nowhere near certain"); *Sierakowski v. Ryan*, 223 F.3d 440, 444–45 (7th Cir. 2000) (allegations that the plaintiff was tested for HIV without his consent in the past left the court "with bare speculation about what testing [his] doctors will later decide to conduct," where the challenged statute left unconsented testing decisions "in the hands of individual physicians, to be made on a case-by-case basis"). Without a showing of "a sufficient likelihood that he will again be wronged in a similar way, [Morgan] is no more entitled to an injunction than any other citizen," and his claim for an order requiring the BOP to change its policies does not present an Article III case or controversy. *Lyons*, 461 U.S. at 111.

**B.**

Morgan also seeks damages from the BOP and Warden Ci-
olli for a RFRA violation. On this claim, he has alleged suffi-
cient facts to establish standing. But he runs immediately into
another threshold problem: federal sovereign immunity bars
suits against the United States, including suits against federal
agencies or federal officials in their official capacities, unless
Congress has waived this immunity. *See United States v.
Testan*, 424 U.S. 392, 399 (1976).

The Supreme Court has described federal sovereign im-
munity as jurisdictional. *See id.* ("It long has been established,
of course, that the United States, as sovereign, 'is immune
from suit save as it consents to be sued . . . and the terms of its
consent to be sued in any court define that court's jurisdiction
to entertain the suit.'" (quoting *United States v. Sherwood*, 312
U.S. 584, 586 (1941)); *United States v. Mitchell*, 463 U.S. 206, 212
(1983) ("It is axiomatic that the United States may not be sued
without its consent and that the existence of consent is a pre-
requisite for jurisdiction."). "[T]he word 'jurisdictional' is
generally reserved for prescriptions delineating the classes of
cases a court may entertain (subject-matter jurisdiction) and
the persons over whom the court may exercise adjudicatory
authority (personal jurisdiction)." *Fort Bend Cnty. v. Davis*, 587
U.S. 541, 548 (2019). While courts use the word in other ways,
the Supreme Court has undertaken to "ward off" this practice
in recent years. *Id.* (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*,
568 U.S. 145, 153 (2013)).

Applicable caselaw leaves some ambiguity about the cor-
rect label for sovereign immunity. We have held that "sover-
eign immunity does not diminish a court's subject-matter ju-
risdiction," relying on proof by contraposition: Governments

can waive the benefit of sovereign immunity, but limits on subject-matter jurisdiction cannot be waived. *Blagojevich v. Gates*, 519 F.3d 370, 371 (7th Cir. 2008). Sovereign immunity remains "jurisdictional," however, in the sense that a dismissal based on sovereign immunity does not implicate the merits of a case. *See McHugh v. Illinois Dep't of Transp.*, 55 F.4th 529, 533–34, 534 n.2 (7th Cir. 2022); *Meyers v. Oneida Tribe of Indians of Wisconsin*, 836 F.3d 818, 822 (7th Cir. 2016). Perhaps sovereign immunity is a doctrine of personal jurisdiction. *See Turkiye Halk Bankasi A.S. v. United States*, 598 U.S. 264, 282 (2023) (Gorsuch, J., concurring in part) (stating that "questions of sovereign immunity usually go to a court's personal jurisdiction over a particular defendant"); *see also Franchise Tax Bd. of California v. Hyatt*, 587 U.S. 230, 238–39 (2019) (explaining that sovereign immunity derives from the "common-law rule … that 'no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him'" (quoting 1 W. Blackstone, Commentaries on the Laws of England 235 (1765))).

Regardless of the correct label, however, the importance of sovereign immunity for this case is settled: Except as Congress has consented, Morgan cannot obtain damages from the BOP—or Warden Ciolli in his official capacity—through this suit, and a court cannot adjudicate the merits of Morgan's claim for monetary damages. Without resolving the characterization ambiguity, we therefore turn to consent.

RFRA provides that "[a] person whose religious exercise has been burdened … may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000bb-1(c). The statute defines "government" to include a federal agency such as the

BOP. § 2000bb-2(1). Morgan argues that RFRA's reference to "appropriate relief" waives the federal government's sovereign immunity against damages suits.

We have yet to interpret the phrase "appropriate relief" in RFRA as it relates to waiver, but every other circuit to address this question has held that the phrase is too ambiguous to waive federal sovereign immunity. *See Lancaster v. Sec'y of Navy*, 109 F.4th 283, 294 (4th Cir. 2024); *Hale v. Fed. Bureau of Prisons*, 759 F. App'x 741, 744 n.4 (10th Cir. 2019) (per curium); *Davila v. Gladden*, 777 F.3d 1198, 1209–10 (11th Cir. 2015); *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022, 1026 (D.C. Cir. 2006). Likewise, in *Sossamon v. Texas*, 563 U.S. 277 (2011), the Supreme Court held that the phrase "appropriate relief" in the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*, which provides state prisoners the same religious protection afforded federal prisoners under RFRA, does not waive state sovereign immunity against damages suits, *id.* at 280–81, 285–88.

Notably, our sister circuits, except for the Fourth Circuit, decided this question before the Supreme Court's decision in *Tanzin v. Tanvir*, 592 U.S. 43 (2020). In *Tanzin*, the Court held that RFRA permits damages claims against federal officials in their individual capacities. *Id.* at 51. But federal officials sued in their individual capacities are not entitled to sovereign immunity. *Larson v. Domestic & Foreign Com. Corp.*, 337 U.S. 682, 689 (1949). And this difference was central to the Court's reasoning in *Tanzin*, as it distinguished *Sossamon* by noting "[t]he obvious difference" that individual-capacity claims do not implicate sovereign immunity. 592 U.S. at 52.

Simply put, different interpretive principles apply when sovereign immunity is involved. Immunity from private suits, though waivable, "has long been considered 'central to sovereign dignity,'" *Sossamon*, 563 U.S. at 283 (quoting *Alden v. Maine*, 527 U.S. 706, 715 (1999)), and "[s]overeign immunity principles enforce an important constitutional limitation on the power of the federal courts," *id.* at 284. *See also United States v. Lee*, 106 U.S. 196, 205–07 (1882) (tracing the origins of sovereign immunity to before the time of Edward the First). A waiver of federal or state sovereign immunity thus must be "unequivocally expressed" in the text of the relevant statute. *See, e.g.*, *F.A.A. v. Cooper*, 566 U.S. 284, 290 (2012); *Sossamon*, 563 U.S. at 284. Applying this rule, we join our sister circuits in holding that the phrase "appropriate relief" in RFRA is too ambiguous to waive federal sovereign immunity.

Because RFRA does not authorize damages suits against the United States, Morgan's ability to obtain damages depends on whether Morgan sued Warden Ciolli in his individual capacity. The underlying complaint only mentions Ciolli in the caption, which lists "Warden Ciolli" as a defendant. In his notice of appeal, Morgan added that Ciolli is "the officer [with] authority over the" prison. Given these allegations, we construe Morgan's damages claim against Ciolli as an official-capacity claim barred by sovereign immunity.

Even if Morgan sued Ciolli in his individual capacity, we agree with the district court that the claim would fail at the pleading stage for lack of allegations establishing Ciolli's personal involvement in Morgan's kosher-diet suspension. Morgan has not argued that a vicarious liability theory is viable under RFRA, and we are only aware of precedent to the contrary. *See Patel v. Bureau of Prisons*, 125 F. Supp. 3d 44, 55

(D.D.C. 2015) (concluding that "pure vicarious liability—that is, liability of supervisors based solely on the acts of their subordinates—is not sufficient to state a claim under RFRA"). Rather, implicitly conceding the defendants' argument that liability under RFRA requires personal involvement and the complaint's allegations fail to meet the relevant standard, Morgan requests a remand to the district court with instructions to allow Morgan to file an amended complaint clarifying Ciolli's involvement in the suspension.

We recognize that the district court *sua sponte* raised sovereign immunity and Morgan's failure to include allegations about Ciolli's conduct in its second dismissal order. The court entered this dismissal with prejudice, so Morgan lacked an opportunity to cure these defects. "*Sua sponte* dismissals without prior notice or an opportunity to be heard on the issues underlying the dismissal … generally may be considered hazardous…." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1022 (7th Cir. 2013) (quoting *Eades v. Thompson*, 823 F.2d 1055, 1061–62 (7th Cir. 1987)). Morgan, however, has not explained on appeal what allegations he would add about Ciolli's conduct if given the opportunity. And sovereign immunity means amendment would be futile unless Morgan can make out an individual-capacity claim against Ciolli. We therefore see no basis to permit Morgan to amend his complaint.

*          *          *

The district court lacked subject-matter jurisdiction over Morgan's claim for prospective injunctive relief, and federal sovereign immunity bars Morgan's claim for monetary damages, so the court properly dismissed the complaint. The dismissal should have been without prejudice, however, because "a dismissal with prejudice is a merits disposition," *Flynn v.*

*FCA US LLC*, 39 F.4th 946, 954 (7th Cir. 2022), and a court cannot enter judgment on the merits when it lacks subject-matter jurisdiction or sovereign immunity applies, *id.*; *McHugh*, 55 F.4th at 534 n.2; *Meyers*, 836 F.3d at 822. We thus modify the judgment of the district court to reflect a jurisdictional dismissal. As modified, the judgment is

AFFIRMED.