In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 25-1208

RAMONA MILAM,

*Plaintiff-Appellant,*

*v.*

SELENE FINANCE, LP,

*Defendant-Appellee.*

---

Appeal from the United States District Court for
the Northern District of Illinois, Eastern Division.
No. 1:24-cv-00317 — **Virginia M. Kendall,** *Chief Judge.*

---

ARGUED OCTOBER 27, 2025 — DECIDED DECEMBER 22, 2025

---

Before EASTERBROOK, ROVNER, and SCUDDER, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Ramona Milam is an Illinois homeowner who took out a mortgage loan. Selene Finance acts as the loan servicer, collecting her mortgage payments on behalf of the lender. When Milam missed payments in 2023, Selene sent her a letter threatening the possibility of acceleration and foreclosure if she did not cure her default within 35 days. Milam alleges that, because a federal regulation and its own

internal practices prevented Selene from acting on the deadline, the letter amounted to a threat intended to panic her into prompt payment. After making a payment, Milam sued Selene in federal court, alleging that the misleading letter violated the Fair Debt Collection Practices Act and Illinois law. The district court dismissed her claims, finding that Selene was the lender's assignee and thereby entitled under the original mortgage to notice and an opportunity to cure prior to Milam's lawsuit. Because Milam's complaint does not resolve whether Selene was an assignee under Illinois law, we return the case to the district court for further proceedings.

## I

### A

In 2005 Ramona Milam obtained a loan to purchase her Illinois home. To secure the loan, she executed a mortgage in favor of the original lender, HSBC Mortgage Services, Inc.

Selene Finance has serviced Milam's loan since 2021. The servicing occurs pursuant to a contractual relationship either directly with the current holder of the mortgage or with another loan servicing company. In either case, a contract separate and apart from the mortgage defines the nature and scope of Selene's servicing rights. As the loan servicer, Selene collects Milam's mortgage payments as they become due and distributes them to the lender.

In 2023 Milam fell behind on her mortgage payments. On April 17, when her payment was 47 days overdue, Selene sent a letter notifying Milam of her default and the amount due to cure. The letter also included this paragraph:

> The total amount you must pay to cure the default stated above must be received by

> 05/22/2023. Failure to cure the default on or be-
> fore the date specified may result in acceleration
> of the sums secured by the Security Instrument,
> sale of the property and/or foreclosure by judi-
> cial proceeding and sale of the property.

May 22 was 35 days after the date of the letter. Adding those 35 days to the 47 days that had already elapsed, the letter offered Milam a grace period of 82 days of delinquency before facing the consequences identified in Selene's letter.

Milam reacted by promptly making a mortgage payment. But she then sued Selene on behalf of herself and other Illinois homeowners who received similar letters when their mortgage loans became at least 45 days delinquent. Milam alleged that Selene's letters violated the Fair Debt Collection Practices Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. She also brought a state law claim for negligent misrepresentation.

Each claim relies on the same theory of alleged wrongdoing. Milam maintains that Selene—in part due to a federal regulation and in part due to internal practice—will never accelerate or foreclose on a mortgage loan unless it becomes at least 120 days delinquent. So, by Milam's account, when Selene's letters tell mortgagors they have 35 days to pay or face acceleration and foreclosure, they are threatening consequences on an invented and artificial timeline that Selene cannot and will not enforce. Milam contends that the false scare often has the intended effect of spurring payment and amounts to an abusive collection practice.

B

Selene moved to dismiss Milam's complaint, invoking a provision in the underlying mortgage that requires the lender and the borrower to provide each other with notice and a "reasonable period … to take corrective action" before commencing most judicial actions. Selene claimed that, as the loan servicer, it stands as an assignee of the lender and thereby has contractual authority to enforce the provision. Both parties agree that Milam did not provide notice before suing Selene.

The district court saw things Selene's way and granted its motion to dismiss. The court concluded that as a matter of Illinois law, which governs the mortgage, Selene was an assignee of the lender and therefore able to invoke the lender's contractual protections. Because Milam brought suit against Selene without first complying with the mortgage's notice and cure provision, the agreement barred her claims. Milam's two state law claims likewise failed because she did not plead any pecuniary loss.

This appeal followed.

**II**

As this case came to us, we questioned whether Milam had alleged a concrete injury sufficient to establish Article III standing. See *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); see also *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 938–39 (7th Cir. 2022) (collecting cases applying the concrete injury requirement to FDCPA claims). After all, Selene's letter prompted her to make a payment that both sides agreed she owed and was overdue.

Milam's briefing broadly referred to the "time-value of money" when trying to identify the hardship of paying earlier

than she otherwise would have. While we understand the financial principle, its invocation here struck us as opaque—missing clear grounding in the alleged facts of Milam's complaint. We questioned the parties on this point at oral argument, pressing Milam to give greater content to the actual harm she suffered from making a mortgage payment when she did.

We then directed the parties to submit supplemental briefing addressing standing. Our order pointed Milam to 28 U.S.C. § 1653, which states that "[d]efective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts." See *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1048–49 (7th Cir. 2025) (reasoning that § 1653 covers defective allegations of standing). A party may seek to use § 1653 to redress "incorrect statements about jurisdiction that actually exists," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989), giving Milam a path to respond further to our concerns. See *Chandler v. Miller*, 520 U.S. 305, 313 n.2 (1997) (citing § 1653 to support relying on petitioner's factual representation at oral argument to defeat mootness).

Milam has taken up our suggestion, and her supplemental briefing moves under § 1653 to add allegations to her complaint that clarify how her accelerated payment (made in response to Selene's April 17, 2023 letter) resulted in concrete injury. We grant her motion and proceed to consider her amended operative complaint, which functionally now includes the factual allegations in Milam's § 1653 motion.

Two parts of Milam's additional allegations combine to assure us that she has standing. First, she explains that interest was not accruing on her mortgage loan due to her late payment, so she avoided no added interest expense by paying

before Selene could legally force her hand. Second, she fills in more facts about how she would have otherwise used the money. Specifically, she tells us that she borrowed funds to cover health insurance premiums and that she incurred overdraft fees on her bank account as a result of withdrawing money to pay for necessary items like food and utilities. Altogether, Milam's complaint now says enough about how she suffered monetary harm by "act[ing] to her detriment" based on the deadline in Selene's letter. *Brunett v. Convergent Outsourcing, Inc.*, 982 F.3d 1067, 1068 (7th Cir. 2020). With the benefit of her motion under § 1653, we are confident that Milam's complaint establishes standing.

For clarity of the record, Milam may wish to file an amended complaint in the district court on remand. We leave this to the discretion of the district court. Milam's supplemental allegations also will require the district court to revisit its dismissal of her state law claims.

With our jurisdiction secure, we turn to the merits.

### III

The question before us is narrow and one of Illinois law: is Selene Finance an "assign" of the lender under the terms of Milam's mortgage?

Two provisions of the mortgage combine to show why it matters whether Selene is an assignee. Start with the notice and cure provision, which provides:

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges

> that the other party has breached any provision
> of, or any duty owed by reason of, this Security
> Instrument, until such Borrower or Lender has
> notified the other party (with such notice given
> in compliance with the requirements of Section
> 15) of such alleged breach and afforded the
> other party hereto a reasonable period after the
> giving of such notice to take corrective action.

This provision expressly imposes preconditions to filing suit on the "Borrower" and "Lender," as defined in the mortgage. But additional language expands the provision's meaning and scope: "The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender."

Selene seeks to enforce the benefit of the notice and cure provision as an assignee of the lender's servicing rights under the mortgage. For her part, Milam disagrees that any assignment has taken place. The mortgage leaves the term "assign" undefined, so we look to Illinois law for direction.

In Illinois, "[a]n assignment occurs when 'there is a transfer of some identifiable interest from the assignor to the assignee.'" *Cincinnati Ins. Co. v Am. Hardware Mfrs. Ass'n*, 898 N.E.2d 216, 229–30 (Ill. App. Ct. 2008) (quoting *Brandon Apparel Group v. Kirkland & Ellis*, 887 N.E.2d 748, 756 (Ill. App. Ct. 2008)). An assignment transfers to the assignee "all the right, title or interest of the assignor in the thing assigned." *Id.* at 230 (citation omitted). In short, "an assignment puts the assignee into the shoes of the assignor." *Collins Co., Ltd. v. Carboline Co.*, 532 N.E.2d 834, 839 (Ill. 1988).

But assignment is not the only third-party interest recognized by Illinois law. In particular, the Supreme Court of Illinois has recognized both assignment and delegation. "Unlike an assignment, which involves only a transfer of rights, a delegation involves the appointment of another to perform one's duties." *Olson v. Etheridge*, 686 N.E.2d 563, 567 (Ill. 1997). This distinction seems intuitive: tasking another person with taking actions on your behalf "is not the same as the intent to permanently alienate or transfer an ownership interest." *Eychaner v. Gross*, 779 N.E.2d 1115, 1134 (Ill. 2002).

Consider this helpful example from the Supreme Court of Illinois. "[A]n apartment building owner directs her property manager to manage the building with discretion to make decisions concerning building maintenance and finances." *Id.* Add in the responsibility of collecting rent due under the tenants' leases. This arrangement, the State's Supreme Court has explained, would be a "delegation of these duties" that "does not alienate the same rights from the owner, who can always step in and make decisions on her own relating to those matters." *Id.*

With these principles in mind, we conclude that Selene cannot show on the pleadings alone that it is an assignee under Milam's mortgage. See *Marcure v. Lynn*, 992 F.3d 625, 631 (7th Cir. 2021) (interpreting Rule 12(b)(6) as "requiring the movant to show entitlement to dismissal"). It is clear from the complaint and incorporated documents that the lender has authorized Selene to act on its behalf, including by collecting mortgage payments from Milam. But Illinois law precludes us from equating this authorization with assignment. Selene's servicing contract is not in the record as it presently stands, and we cannot rule out the possibility that the lender, like the

property owner in the example supplied by the Supreme Court of Illinois, has merely delegated the performance of certain contractual duties to Selene.

Put most simply, we cannot resolve on the pleadings that Selene, as a mortgage loan servicer, is an assignee as a matter of Illinois law. See *Bayview Loan Servicing, L.L.C. v. Nelson*, 890 N.E.2d 940, 944 (Ill. App. Ct. 2008) (concluding that a loan servicer, Bayview, was not a mortgage lender's assignee because there was "no evidence that Bayview ever obtained any legal interest in the subject property" and "[a]t most, the record indicate[d] that the [current lender] relied upon Bayview to service the mortgage payments"). The case needs further analysis in the district court, informed not only by Illinois law, but also by Selene's servicing agreement.

For these reasons, we REVERSE and REMAND.