In the

# United States Court of Appeals

## for the Seventh Circuit

_____

No. 24-3019

SALVATORE ARCIDIACONO, et al.,

*Plaintiffs-Appellants*,

*v.*

ELIZABETH M. WHITEHORN and
DULCE QUINTERO,

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 24 CV 412 — **Manish S. Shah**, *Judge*.

_____

ARGUED OCTOBER 29, 2025 — DECIDED JUNE 8, 2026

_____

Before SYKES, ST. EVE, and MALDONADO, *Circuit Judges*.

SYKES, *Circuit Judge*. When a Medicaid beneficiary is admitted to a long-term care facility in Illinois, the facility must submit an electronic form to the Illinois Department of Healthcare and Family Services providing basic information about the patient, the reason for admission, and the type of care the facility expects to provide. This "admission packet" is a prerequisite to the facility's Medicaid reimbursement.

The plaintiffs here are four Illinois Medicaid beneficiaries who were admitted to long-term care facilities and whose admission packets were rejected or mishandled by the Department. That, in turn, meant that the healthcare facilities were not reimbursed for at least a portion of their care. And although the law prohibits medical providers from billing Medicaid beneficiaries for unreimbursed care, the healthcare facilities billed the plaintiffs anyway. But the bills were meaningless because beneficiaries are not liable for the cost of unreimbursed care.

Although they suffered no financial loss or interruption in their healthcare services, the plaintiffs sued the state officials who run the Medicaid program claiming that the Department rejected their admission packets for either hypertechnical reasons or no reason at all. They propose to represent a class of Medicaid beneficiaries whose admission packets were rejected under similar circumstances. The suit raises claims for violation of due process and the Medicaid Act and seeks a permanent injunction requiring systemic reform.

The defendants moved to dismiss the case on two grounds: lack of standing and failure to state a viable claim for relief. The district judge granted the motion on the second ground, reasoning that the plaintiffs adequately alleged standing to sue (because they had received bills from the healthcare facilities) but failed to state a claim for violation of a statutory or constitutional right. The plaintiffs appealed.

We begin and end with the question of standing. As noted, the complaint requests only injunctive relief; the plaintiffs do not seek damages. To establish standing to sue for injunctive relief, the plaintiffs must allege facts showing that they "face a real and immediate threat of repeated injury." *Murthy v.*

*Missouri*, 603 U.S. 43, 58 (2024) (quotation omitted). They have not done so. The rejection of their admission packets did not harm them, and they have not alleged any facts showing that they face a real and imminent threat of future injury. Accordingly, the plaintiffs lack standing to sue, and their complaint should have been dismissed on that basis. We therefore modify the judgment to reflect a jurisdictional dismissal. As modified, we affirm the judgment.

## I. Background

This case comes to us at the pleading stage, so we accept as true the following allegations from the amended complaint. Between 2018 and 2023, the four named plaintiffs—Salvatore Arcidiacono, William Brown, Susan Miller, and William Sarchet—were admitted for long-term care at skilled nursing facilities in Illinois. Three of the four plaintiffs had already qualified for Illinois's Medicaid program—and more specifically, for long-term care benefits. The fourth qualified not long after her admission. *See* ILL. ADMIN. CODE tit. 89, § 120.10 (setting forth eligibility requirements for the Medicaid program); *id.* § 120.61 (the same for long-term care benefits). So the cost of their healthcare was at least presumptively covered by Medicaid. *See Saint Anthony Hosp. v. Whitehorn*, 132 F.4th 962, 966 (7th Cir. 2025) (en banc) (describing Illinois's payment scheme).

Unsurprisingly, a healthcare facility's reimbursement for care provided to Medicaid beneficiaries requires compliance with numerous regulatory requirements. As relevant here, the first step requires notice to the Illinois Department of Healthcare and Family Services that a beneficiary has been

admitted.[1] Under Illinois law, a long-term care facility must submit a so-called "admission packet" for each admitted Medicaid beneficiary using the state's Medical Electronic Data Interchange (or "MEDI") system. 305 ILL. COMP. STAT. 5/5-5. The admission packet requires basic information about the new admission, including the beneficiary's full name and social security number, the date of admission, the admitting diagnosis, and the services and level of care required. When three of the four plaintiffs were admitted for long-term care, the electronic admission packet was due within 45 days of admission; in January 2022 the timeframe was increased to 120 days. ILL. ADMIN. CODE tit. 89, § 140.513(b)(3)–(4).

A timely and complete admission packet is a critical step to a medical provider's reimbursement for the beneficiary's care. Missed deadlines, inaccuracies, or incomplete submissions put a healthcare facility's later claim for payment at risk: the Department may decline to reimburse the facility for some of the beneficiary's care. § 5/5-5.

The plaintiffs claim that the Department routinely rejects admission packets for overly technical reasons or no reason at all. They allege, for example, that if a healthcare facility makes a trivial error—say, by misspelling the beneficiary's name, listing the wrong code for the beneficiary's admitting diagnosis, or omitting a required document—the Department will reject the admission packet. They also claim that the

---

[1] The Illinois Department of Human Services also has a role in administering the state's Medicaid program. The allocation of duties between the departments is irrelevant here, so for simplicity we refer to them collectively as "the Department."

Department often rejects timely admission packets that are entirely free from error.

When an admission packet is rejected, the Department does not allow for corrections or supplementations; the healthcare facility must submit a new one. That's where the timing requirement comes into play. By the time the Department notifies the provider of a rejected admission packet, the filing deadline has often already passed. The plaintiffs contend that the Department intentionally delays its rejections to guarantee the untimeliness of any subsequent submission. If the initial admission packet is rejected and a new one is filed after the original deadline has expired, the Department will refuse to reimburse the costs incurred prior to the second submission. Put in practical terms, a delayed rejection often jeopardizes a healthcare facility's reimbursement for the first several weeks (or months) of a beneficiary's care.

If a reimbursement claim is denied (or partially denied), the medical provider's exclusive remedy is an action against the State in the Illinois Court of Claims. 305 ILL. COMP. STAT. 5/11-13. Under both federal and state law, a facility may not bill or otherwise seek payment from a Medicaid beneficiary or his family. *See* 42 C.F.R. § 447.15; ILL. ADMIN. CODE tit. 89, § 140.12(i)(1).

With that, we turn to the allegations specific to each plaintiff. In December 2020 Salvatore Arcidiacono was admitted to Bryn Mawr Care, a long-term care facility in Illinois. On the day he was admitted, Bryn Mawr submitted a MEDI admission packet, but the Department later rejected it as untimely. Bryn Mawr filed a second packet, which the Department approved. Given the gap, however, the State refused to pay the healthcare facility's reimbursement claim for the first several

months of Arcidiacono's care. Bryn Mawr sent him a bill for $13,675.

William Brown was admitted in March 2021 to Generations at Applewood, another Illinois long-term care facility, for about three weeks of skilled nursing care. Applewood submitted a timely MEDI admission packet for him, but the Department supposedly never received it and denied the facility's reimbursement claim for the entirety of his care. The facility sent him a bill for $4,929.

Since April 2023 Susan Miller has been a resident of River Crossing of St. Charles, an Illinois long-term care facility operated by Greystone Healthcare. For the first several months of her care, she was not eligible for Medicaid benefits. But once her Medicaid application was approved, the healthcare facility submitted a MEDI admission packet on her behalf. Although the Department accepted her packet, it miscalculated her Medicaid eligibility date, so approximately six months of her care was not reimbursed. The healthcare facility sent her a bill for $43,358.

William Sarchet was admitted to Bryn Mawr Care in November 2018 and remained a resident for about two and a half years. Bryn Mawr submitted a MEDI admission packet the day he was admitted. The Department initially approved it but reversed course and rejected it six months later, leaving Bryn Mawr with an unreimbursed balance of $49,410. When Sarchet was discharged, the healthcare facility billed him for that amount. He was readmitted to Bryn Mawr in December 2023.

In 2024 the four plaintiffs filed a proposed class action against the Director of the Department of Healthcare and

Family Services and the Secretary of the Department of Human Services in their official capacities. The suit raises claims under 42 U.S.C. § 1983 for deprivation of due process and violation of several provisions of the Medicaid Act. The allegations focus on two asserted flaws in the state system for processing admission packets filed by long-term care facilities when new Medicaid patients are admitted. The first is the lack of prior notice and an opportunity for a hearing for Medicaid beneficiaries whose admission packets are rejected. The second is the use of the online MEDI submission system, which the plaintiffs allege has not been approved by the Centers for Medicare and Medicaid Services.

Importantly, however, the suit does not request damages; the plaintiffs instead seek permanent injunctive relief requiring prospective systemic reform. More specifically, they request a four-part injunction requiring the Department to: (1) process all MEDI admission packets within 45 days of receipt; (2) resolve, within 45 days, all admission packets that have been pending more than 45 days; (3) provide notice to Medicaid beneficiaries of the decision to accept or reject an admission packet; and (4) provide a hearing upon request to any Medicaid beneficiary whose admission packet is rejected.

The state officials moved to dismiss the amended complaint on both jurisdictional and substantive grounds. As to jurisdiction, they argued that the plaintiffs lack standing because the rejection of their admission packets did not cause them any injury and the proposed injunction would not benefit them. On the merits, they argued that the amended complaint failed to state a claim for either a constitutional or a statutory violation because the plaintiffs were not denied any benefits or healthcare services and the relevant provisions of

the Medicaid Act do not confer individually enforceable rights.

The district judge held that the amended complaint adequately alleged standing because the plaintiffs received bills for unreimbursed care. But he agreed with the Illinois officials that the plaintiffs failed to state a claim for either a constitutional or statutory violation. He reasoned that because the rejection of a MEDI admission packet causes no loss of benefits or healthcare services, beneficiaries "are not due any process." He also concluded that the relevant provisions in the Medicaid Act either were not violated or are unenforceable under § 1983. Accordingly, the judge granted the motion and dismissed the case, and this appeal followed.

## II. Discussion

Our first (and here only) question concerns jurisdiction—specifically, the plaintiffs' standing to sue, a requirement that enforces the constitutional limits on the federal judiciary's power. Because Article III of the Constitution restricts the federal courts to deciding "Cases" and "Controversies" that are sufficiently concrete and appropriate for judicial resolution, a plaintiff must have legal standing—that is, "a personal stake in the outcome of the controversy." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quotation omitted). To establish standing, the plaintiff must have "suffered, or will suffer, an injury that is concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Murthy*, 603 U.S. at 57 (quotation omitted).

The plaintiffs have sued for injunctive relief—they do not seek damages—so they must allege facts showing that they face "a substantial risk of future injury." *Id.* at 69. Put slightly

differently, to proceed on a claim for "forward-looking relief," the plaintiffs "must face 'a real and immediate threat of repeated injury.'" *Id.* at 58 (quoting *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). A past injury cannot, without more, demonstrate "a present case or controversy regarding injunctive relief." *O'Shea*, 414 U.S. at 495–96. Moreover, an alleged risk of injury does not satisfy Article III unless it is both "substantial" and likely to materialize "in the near future." *Murthy*, 603 U.S. at 58. Allegations of future injury founded on nothing more than conjecture or hypothesis do not suffice. *Morgan v. Fed. Bureau of Prisons*, 129 F.4th 1043, 1048 (7th Cir. 2025).

Finally, "[a] plaintiff must demonstrate standing 'with the manner and degree of evidence required at the successive stages of the litigation.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Where, as here, a case is at the pleading stage, the plaintiff must clearly … allege facts demonstrating" his standing to sue. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (alteration in original) (quotation omitted).

Applying these principles here, the plaintiffs' allegations fall woefully short. The amended complaint lacks allegations showing that the plaintiffs face a substantial and imminent threat of injury traceable to the challenged actions of the state officials in connection with the MEDI admission-packet system. Indeed, the amended complaint says *nothing at all* about a risk of future injury to the plaintiffs. Instead, it describes financial losses suffered by healthcare facilities when MEDI admission packets are rejected. Monetary harm is, of course, a quintessential Article III injury. *TransUnion*, 594 U.S. at 425. That is so, however, only for monetary harm *to the plaintiff*. *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163, 166 (1972) (A plaintiff

"has standing to seek redress for injuries done to him, but he may not seek redress for injuries done to others."). As we've explained, federal and state regulations prohibit medical providers from billing or otherwise seeking payment from Medicaid beneficiaries for unreimbursed costs. *See* 42 C.F.R. § 447.15; ILL. ADMIN. CODE tit. 89, § 140.12(i)(1); *see also* 305 ILL. COMP. STAT. 5/11–13. So while the amended complaint alleges that the plaintiffs were billed for unreimbursed care, they "are not legally responsible" for those costs. *Banks v. Sec'y of Ind. Fam. & Soc. Servs. Admin.*, 997 F.2d 231, 244 (7th Cir. 1993).

Accordingly, to the extent that the Illinois system for reviewing admission packets has caused (or continues to cause) any financial harm, healthcare facilities suffer the loss, *not* Medicaid beneficiaries. That the plaintiffs received meaningless bills for unreimbursed care does not establish that they face a substantial risk of future injury; indeed, the bills are legally irrelevant. The plaintiffs do not allege that they were deprived of healthcare services or other benefits or suffered any other adverse consequences stemming from the alleged flaws in the admission-packet review system.

In a new argument on appeal—raised for the first time in their reply brief—the plaintiffs assert that they "could" require readmission to a long-term care facility "at any time." Arguments couched in "coulds," "maybes," and "ifs" are far too speculative to support standing to sue for prospective relief. Because the plaintiffs' newly raised argument "convey[s] but a '*possible* future injury'" rather than a real and immediate threat of injury, it is not sufficient to establish standing to seek injunctive relief. *Access Living of Metro. Chi. v. Uber Techs., Inc.*, 958 F.3d 604, 613 (7th Cir. 2020) (quoting *Clapper v. Amnesty Int'l*, 568 U.S. 398, 409 (2013)).

Our recent decision in *Morgan* confirms that the plaintiffs lack standing. There, a federal prisoner, a Messianic Jew, purchased a turkey log from his prison's commissary "in an apparent violation of the prison's kosher diet program." 129 F.4th at 1046. As a result, the prison chaplain suspended his "approval for a kosher diet for thirty days." *Id.* The prisoner sued, seeking an injunction prohibiting the prison from again eliminating his access to a kosher diet.

We held that the prisoner lacked standing to seek injunctive relief: as here, his complaint did not allege facts showing the likelihood of repeated injury. And although he tried to address this deficiency in his brief on appeal, we concluded that "his prospects of future injury [were] too speculative to support standing." *Id.* at 1049. His single unauthorized commissary purchase did not establish that he was likely to make another unauthorized purchase in the future, and there was "no reason to believe" that the chaplain at the new facility to which he had been transferred "would be so quick to issue" a similar suspension. *Id.* He thus failed to demonstrate a sufficient risk of future harm.

The same is true here. The plaintiffs' new assertion that they *might* be readmitted to a long-term care facility at some point in the future, which in turn *could* trigger a series of events that *could* result in a rejected admission packet, is far too "layered with hypothetical and nowhere near certain." *Swanigan v. City of Chicago*, 881 F.3d 577, 583 (7th Cir. 2018). Because they have not established "a sufficient likelihood that [they] will again be wronged in a similar way," the district court lacked jurisdiction to adjudicate their suit for injunctive relief. *Id.* (quoting *City of Los Angelos v. Lyons*, 461 U.S. 95, 111 (1983)).

The plaintiffs rely on our decision in *Banks* to support their case for standing. The district judge was persuaded by this argument. We disagree, though the invocation of *Banks* was understandable. The plaintiffs there alleged that the Secretary of Health and Human Services had failed to enforce federal regulations requiring state Medicaid agencies to provide a hearing before a claim for medical assistance is denied or not promptly decided. *Banks*, 997 F.2d at 240. We explained that the plaintiffs "had a concrete interest in Medicaid benefits." *Id.* And because they had been "billed for services rendered" and were later "hauled into court" on those bills, they had adequately alleged injuries cognizable under Article III. *Id.* at 238–39.

The plaintiffs in *Banks* sought an injunction requiring the Secretary "to properly supervise" Indiana's Medicaid agency to ensure its future "compliance with state and federal law." *Id.* at 235. But they also sought retrospective relief—specifically, an order directing Indiana officials to issue a notice explaining their refusal to reimburse providers for *past* services and to provide a retroactive hearing to contest that determination. *Banks v. Sec'y of Ind. Fam. & Soc. Servs. Admin.*, 790 F. Supp. 1427, 1431 (N.D. Ind. 1992). That is, the plaintiffs sought backward-looking relief for past harm. The same is not true here. *Banks* is distinguishable.

We confess that *Banks* could have more clearly articulated the distinction between forward-looking and backward-looking remedies. But the decision must be understood in the context of the arguments actually raised and addressed— none of which centered on the different forms of relief requested. And since *Banks*, the Supreme Court has repeatedly reinforced the distinction between prospective and

retrospective relief, making clear that a claim for prospective injunctive relief always requires a showing of a substantial likelihood of an imminent future injury. *See, e.g., Murthy*, 603 U.S. at 58; *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024); *TransUnion*, 594 U.S. at 435–36. As have we. *See, e.g., Morgan*, 129 F.4th at 1048; *Swanigan*, 881 F.3d at 583; *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017).

In any event, standing is a constitutional requirement that constrains the federal judiciary's exercise of jurisdiction. So regardless of *Banks*'s imprecision, we must enforce the standing requirements for the specific form of relief the plaintiffs have requested here. *Pierre v. Midland Credit Mgmt., Inc.*, 29 F.4th 934, 937 (7th Cir. 2022). And as we've explained, they have not satisfied those requirements.

Finally, the plaintiffs assert that they have identified an ongoing harm that is capable of repetition yet evading review. This argument rests on a category error: The "capable of repetition" doctrine does not confer Article III *standing*; it saves claims from *mootness*. The standing and mootness doctrines, though related, "address different aspects of a federal court's jurisdiction to hear a case." *Lehn v. Holmes*, 364 F.3d 862, 870 (7th Cir. 2004). So "the fact that [a] dispute is capable of repetition yet evading review" does not entitle a plaintiff who otherwise lacks standing "to a federal judicial forum." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 191 (2000).

Besides, the "capable of repetition" argument fails on its own terms. To invoke the exception, a plaintiff must establish "a reasonable expectation that [he] … will be subject to the same action again." *Gill v. Linnabary*, 63 F.4th 609, 613 (7th Cir. 2023) (quotation omitted). For the reasons already mentioned,

the plaintiffs cannot make this showing; they have not alleged that any one of them is likely to experience another admission-packet rejection. Thus, even if the "capable of repetition" exception could supply a basis for Article III standing (it cannot), it would not do so here.

Because the plaintiffs have not alleged facts showing that they face a substantial, imminent risk of future harm, they lack standing to sue for prospective injunctive relief. We accordingly modify the judgment to reflect a jurisdictional dismissal for lack of standing. As modified, the judgment is

AFFIRMED.